UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JARVIS BROWN,<br><br>    Petitioner,<br><br>v.<br><br>STEVEN LAKE,<br><br>    Respondent. | No. 1:18-cv-00842-DAD-SKO (HC)<br><br>**FINDINGS AND RECOMMENDATIONS TO DENY PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**(Doc. 1)** |

Petitioner, Jarvis Brown, is a federal prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner contends his Due Process rights were violated during a prison disciplinary hearing. The Court referred the matter to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 and 304. Having reviewed the record as a whole and applicable law, the undersigned recommends that the Court deny the petition.

**I.    Background**

On March 17, 2009, Petitioner pled guilty to conspiracy to possess with intent to distribute and distribution of 50 plus grams of cocaine base (21 U.S.C. §§ 841(a)(1), (b)(1)(A)); conspiracy to interfere with commerce by threats of force and violence (18 U.S.C. § 1951); murder to prevent

1

communication of information to law enforcement (18 U.S.C. § 1512(a)(1)(C), (3)(A)); and three separate counts of using a firearm during a crime of violence and drug trafficking crime resulting in murder (18 U.S.C. § 924 (c)(1)(A)(iii), (j)(1)).  On July 8, 2009, the United States District Court for the Southern District of Indiana sentenced Petitioner to consecutive life terms of imprisonment for conspiracy to possess with intent to distribute cocaine base, three counts of use of a firearm during a crime of violence and drug trafficking resulting in murder, and murder; and a consecutive term of 240 months for conspiracy to interfere with commerce by threats of force and violence.

The actions underlying the current petition took place at the Federal Correctional Complex located in Victorville, California ("FCC Victorville").  On May 23, 2016, Petitioner wrote a letter to a female Deputy Chief Psychologist at FCC Victorville.  In the letter, Petitioner wrote:[1]

> Listen,
>
> I know you said to write my questions down, but at this point, I'm just gone speak my mind, tell you what it is and leave the rest to you. . .
>
> They say, "what's understood, need not be explained," because sometimes what's not being said has a way of saying everything.  But of course, to know is to remove all doubt and because I'm not the type of man who has no clarity or commitment to the type of interaction that I would like to have with people, here's the thing – when it comes to you, I want you to know exactly what it is.  So let's be clear, what I want is you.
>
> From day one I've always told you that I consider your being here a "Blessing," but because my Path is structured in such a way where I don't believe in coincidence, today I want you to know that I consider "you to be the [']Blessing.[']"  I've  heard it said, that "whenever you encounter a force of nature, you'll know," and I believe that to be true, because long before I ever said a word to you, knew your name, or looked into those eyes of yours – I knew – I was drawn to your energy.  In physics, they say that in darkness all living organisms gravitate toward the light.  From the moment I laid eyes on you I was caught in your spell.  And yes, there is an incredible physical attraction, that's undeniable.  I lose my train of thought staring into your eyes or at your lips for that matter.  Words are no match for your beauty (which is far from an illusion by the way) but for me the attraction goes so far beyond that.  I'm not only captivated by your mind, I'm totally taken by your person and the way you radiate a capacity for people that demonstrates that as human beings, the quality of our lives will always be measured by what we give.

---

[1] The letter is reproduced in full.  The letter's misspellings and grammatical errors are unchanged.

> And there's also a quality about you that resonates in the depths of my soul. A quality that is rare, because it's not often that another human being (outside of my children) stirs my soul so thoroughly and so completely. I never met a person quite like you. You have a presence that lingers in my soul long after your gone. And for the record, I've tried to "ignore it" but I can't stop thinking about you and one thing about energy is that it can't be denied and yours is impossible to ignore, because <u>even</u> in my sleep I can't escape you.
>
> They say that a man and a woman are twins of the same essence, "created to work together to bring the will of God into fruition," that's why the strongest impetus that a man will ever have in an individual sense, when it comes to answering the irrevocable call of destiny that is his life, will always come from a woman he admires. Only God knows why it takes a certain kind of woman to motivate a certain kind of man – to keep him centered, energized and passionate when he's tasked to toil at the very edge of his limits and challenged to reach beyond them. For me, you are that woman. You are everything I've prayed for and more. [S]o it's hard for me not to be grateful for all that He has given me in you. See God knew I needed a Solider that's why He sent me one, you! You spoke on wanting to do something meaningful, besides paperwork. Bae, you gone do something meaningful because "we" gone do something meaningful, we gone do it together.
>
> Let me clarify something, you spoke about appearances and I never really responded to that, but let me say this, Woman, I want you for real, so for me your security and well being will always be a priority & because I know that "success demands secrecy" I will never front you off, give someone that impression or put another living soul outside of yourself in my business. When I told you that I'd never lie to you, never play games with you or throw you under the bus I meant that. And if push ever comes to shove about you and for you I'm not gone hesitate to jump in front of the bus for you. And this aint about you doing anything this is about me laying my cards on the table. And because I want to be faithful with the Blessing that God gave me, this is about me not wanting to waste another moment or squander another opportunity . . . it is what it is. My prayer is that by now you understand that no matter what, I'm always gone respect what you got going on, but I wouldn't be me if I didn't follow my heart. Knowing that when we trust intuition and obey the promptings of the universe that our obedience is not only rewarded, but we discover that the path to destiny is always taken one step at a time. Think about what I said & if it's in our cards I'll see you soon. I knew I should have told you all this the other day, but hey I'm telling you now. . .

(Doc. 11 at 13-14) (emphasis in original).

On May 24, 2016, the Deputy Chief Psychologist documented receiving the letter in an Incident Report form. She wrote:

> I noticed [Petitioner] watching me through the window from Education into Psychology Services several month ago, while I was alone in the office. I addressed the issue specifically with him and warned him that it was inappropriate and must

3

never happen again. He showed remorse and has since interacted appropriately, until yesterday (5/23/16) when he slipped a letter into a psychology workbook he handed me, which stated, in no ambiguous terms, that he wants to have a sexual relationship with me. He went on to propose that it would be maintained in "secrecy." Lastly, he recently enrolled in a group in psychology, which would give him more access to my work station.

*Id.* at 10.

On May 25, 2016, in advance of a Discipline Hearing, the Unit Discipline Committee ("UDC") investigated the Incident Report. The Incident Report accused Petitioner of violating 28 C.F.R. § 541.3 Code 225, stalking another person through repeated behavior which harasses, alarms, or annoys the person. The UDC contacted Petitioner regarding the Incident Report. Petitioner was advised of his rights, refused to make a statement and was given a copy of the Incident Report.

On May 27, 2016, the UDC met with Petitioner again regarding the Incident Report. He was told that a hearing would be scheduled before the Discipline Hearing Officer ("DHO") at the next available hearing date. Petitioner signed the Notice of Disciplinary Hearing form ("Notice") , acknowledging his rights and waiving his right for a staff representative and right to call witnesses to testify at the Discipline Hearing.

On June 1, 2016, a Discipline Hearing was conducted. At the hearing, Petitioner declined to have a staff representative, waived the right to call witnesses, and confirmed that he had received a copy of the Incident Report. Petitioner stated, "I wrote the letter."

The DHO made the following findings and conclusions:

[Petitioner]'s due process rights were read and reviewed by the DHO to the inmate. The DHO confirmed the inmate received a copy of the incident report, did not want a staff representative, and did not have any documentary evidence to submit. The inmate understood his due process rights and was ready to proceed with the DHO hearing.

The DHO found [Petitioner] committed the prohibited act of Making Sexual

4

Proposals or Threats, in violation of Code 206.[2] The DHO relied upon the reporting officer's statement which indicated on [M]ay 23rd 2016 at approximately 2:30 PM the reporting officer noticed [Petitioner] watching her through the window from education into psychology services several months ago, while I was alone in the office. I address[ed] the issue specifically with him and warned him that it was inappropriate and was alone in the office. I address the issue specifically with him and warned him that it was inappropriate and [it] must never happen again. He showed remorse and [h]as since acted appropriately, until yesterday 5-23-15 when he slipped a letter into a psychology workbook and handed it to me, which stated [in] no ambiguous terms that he wants to have a sexual relationship with me. He went on to propose that it would be maintained in secrecy. Lastly, he recently enrolled in a group and psychology. This could give him more access to my workstation.

The DHO considered the handwritten letter provided by the reporting officer which [Petitioner] hand delivered to her. The DHO noted the sexual tone of the letter which was completely inappropriate for the inmate to deliver[ ] to a staff member.

The DHO reviewed the investigation and UDC portions of the disciplinary process and noted [Petitioner] refused to make any statement of defense at the UDC, leading the DHO to draw an adverse inference.

The DHO considered [Petitioner's] statement at the DHO hearing in which he did write the letter.

Based upon the greater weight of the evidence, the DHO was convinced [Petitioner] did Make a Sexual Proposal or Threat, in violation of Code 206.

*Id*. at 18.

As punishment for violating Code 206, the DHO sanctioned Petitioner with 27 days loss of good conduct time and 60 days of disciplinary segregation.

**II.     "Some Evidence" Supported the DHO's Finding**

In his first ground for habeas relief, Petitioner contends he did not make a sexual proposal to the Deputy Chief Psychologist, specifically stating, "[a] clear reading of the letter will reveal that I didn't solicit or proposition sex for of from the psychologist." (Doc. 1 at 7.)

---

[2] 28 C.F.R. § 541.3, Code 206 prohibits "[m]aking sexual proposals or threats to another."

5

**A. Standard of Review**

When a prison disciplinary proceeding may result in the loss of good time credits, due process requires that the prisoner receive: (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an impartial hearing body; (3) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (4) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1984) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)). Further, due process requires that a disciplinary decision be supported by "some evidence." *Id*. at 455 (citing *United States ex rel. Vatauer v. Comm'r of Immigration*, 273 U.S. 103, 106 (1927)).

The Supreme Court "has recognized that a governmental decision resulting in the loss of an important liberty interest violates due process if the decision is not supported by any evidence." *Id*. at 455 (internal citations omitted). The "some evidence" standard "is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced.'" *Id* (citing *Vatauer*, 273 U.S. at 106). The Court does not need to examine the entire record, independently assess the credibility of witnesses, or weigh the evidence in order to determine whether the standard is satisfied. *Id*. "Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*. at 455-56 (internal citations omitted). Therefore, the Due Process Clause does not require the Court to "set aside decisions of prison administrators that have some basis in fact." *Id*. at 456.

**B. The DHO's Finding Was Properly Supported by "Some Evidence"**

Due process requires that the DHO's decision be supported by "some evidence." *Hill*, 472 U.S. at 455. The standard for reviewing prison disciplinary findings as set forth in *Hill*, is "minimally stringent." *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987). The Court will not re-

6

weigh the evidence or make its own assessment as to the credibility of the witnesses. *Hill*, 472 U.S. at 455. If there is any reliable evidence in the record to support the disciplinary findings, the "some evidence" standard is satisfied, and the decision must be upheld. *Powell v. Gomez*, 33 F.3d 39, 40 (9th Cir. 1994); *Hill*, 472 U.S. at 455-56.

Here, in his letter to the Deputy Chief Psychologist, Petitioner stated, "when it comes to you, I want you to know exactly what it is. So let's be clear what I want is you," and "Woman, I want you for real . . ." (Doc. 11 at 13, 14.) Petitioner also wrote,

> From the moment I laid eyes on you, I was caught in your spell. And yes, there is an incredible physical attraction that's undeniable. I lose my train of thought staring into your eyes or at your lips for that matter. Words are no match for your beauty (which is far from an illusion by the way) but for me the attraction goes so far beyond that.

*Id*. at 13.

Petitioner's statements can reasonably be viewed as an effort to develop an inappropriate romantic relationship with the Deputy Chief Psychologist. Therefore, the undersigned finds that there is "some evidence" to support the DHO's decision, and recommends denying Petitioner's claim that there was insufficient evidence to support the DHO's findings.

### III. The DHO Did Not Deny Petitioner His Due Process Rights

In his second ground for habeas relief, Petitioner alleges he did not receive the incident report before the Discipline Hearing. (Doc. 1 at 7.) Petitioner further claims evidence that he had received the Incident Report had been fabricated. *Id*.

The Incident Report shows the violation occurred on May 23, 2016, and shows the Incident Report was delivered to Petitioner on May 25, 2016 at 1:00 p.m. (Doc. 11 at 10.) The Incident Report describes the charged incident and shows that when asked if the charge was accurate, Petitioner stated, "no comment." *Id*. On May 27, 2016, Petitioner was given a Notice of Discipline Hearing, which stated the charged incident would be heard on the next available docket, and listed

Petitioner's rights. *Id*. at 21.  The first right listed in the Notice states that Petitioner had "[t]he right to have a written copy of the charge(s) against you at least 24 hours prior to appearing before the Discipline Hearing Officer." *Id*. at 22.  Petitioner signed the Notice. *Id*.  Nothing in the record suggests that Petitioner complained before the Discipline Hearing that he had not received the Incident Report.

The Discipline Hearing Officer Report confirms that Petitioner received a copy of the Incident Report on May 25, 2016 at 1:00 p.m. and was advised of his rights on May 27, 2016 at 12:20 p.m. *Id*. at 16.  In his findings, the DHO wrote that he "confirmed [Petitioner] received a copy of the incident report . . . . [Petitioner] understood his due process rights and was ready to proceed with the DHO hearing." *Id*. at 18.  Petitioner's conclusory allegation that he did not receive the Incident Report is not sufficient to establish a due process violation.  *See Jones v. Gomez*, 66 F.3d 199, 204-05 (9th Cir. 1995) (conclusory allegations unsupported by a statement of specific facts do not warrant federal habeas relief).

The record reflects that, in this case, the disciplinary hearing complied with the procedural due process requirements delineated by the United States Supreme Court.  *See Wolf*, 418 U.S. at 563-72.  Petitioner was given more than 24 hours' notice of the disciplinary charges, had an opportunity to call witnesses, and was given a written statement by the DHO of the evidence the DHO relied on and the reasons for the disciplinary action.  For these reasons, the undersigned recommends denying Petitioner's petition for writ of habeas corpus.

**IV.** **Conclusion and Recommendation**

Based on the foregoing, the undersigned recommends the Court deny Petitioner's Petition for Writ of Habeas Corpus.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C § 636(b)(1).  Within **thirty (30) days**

after being served with these Findings and Recommendations, either party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections, if any, shall be served and filed within **fourteen (14) days** after service of the objections. The parties are advised that failure to file objections within the specified time may constitute waiver of the right to appeal the District Court's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **January 2, 2019** /s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE